JEFFREY G. SLOANE, ESQ.
Nevada Bar No. 000784
KRAVITZ, SCHNITZER, SLOANE,
JOHNSON & EBERHARDY, CHTD.                 E-Filed: 10/17/08
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 222-4143
JSloane@kssattorneys.com
Attorney for Creditor/Movant
WELLS FARGO FINANCIAL NEVADA 2

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| In Re: | ) | In Proceedings Under |
|---|---|---|
| | ) | Chapter 13 |
| ELIZABETH KELLER | ) | BK-S-08-14891-LBR |
| | ) | |
| Debtor. | ) | Date:   November 12, 2008 |
| | ) | Time:   10:30 a.m. |

<u>MOTION FOR RELIEF FROM STAY</u>

In the event the provisions of the <u>Federal Fair Debt Collection Practice Act</u> are deemed applicable hereunder, please note that this communication is an attempt to collect a debt and any information obtained during the pendency hereof will be used for that purpose.

COMES NOW, WELLS FARGO FINANCIAL NEVADA 2 (hereinafter referred to as "Creditor"), the holder of a secured claim in the above-captioned matter, by and through its attorney, Jeffrey G. Sloane, Esq. of the law firm of Kravitz, Schnitzer, Sloane, Johnson & Eberhardy & Chtd., and respectfully represents to the Court as follows:

1.     On or about , ELIZABETH KELLER, (hereinafter referred to as "Debtor"), filed a voluntary petition under Chapter 13 of the Bankruptcy Code.

2.     Since the filing of said petition, Debtor has remained in possession and control of the Estate of the Debtor.

3.     Debtor is in possession of a certain real property located in Las Vegas, Nevada,

more particularly described as follows:

LOT NINETY-SEVEN (97) IN BLOCK SIX (6) OF TIERRA VISTA ESTATES, UNIT 3, AS

SHOWN BY MAP THEREOF ON FILE ON BOOK 69 OF PLATS, PAGE 34, IN THE

OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY NEVADA.

More commonly known as 5520 Carnation Meadow Street, Las Vegas, NV 88130 .

      4.      On or about October 06, 2004, the Debtor executed an Adjustable Rate Note and

Deed of Trust in favor of , predecessor in interest of the Creditor, for the purpose of securing a

loan in the amount of $345,071.70 plus initial interest at the rate of 6.79 % per annum thereon;

to be repaid at $2,832.00 per month, commencing November 12, 2004.  See copies of Note and

Deed of Trust attached hereto and incorporated herein as Exhibits "1" and "2", respectively.

Payments are currently $3,345.15.

      5.      That the balance currently due and owing to the Creditor is $356,157.95,

exclusive of fees and costs.

      6.      That the Debtor is post-petition past due for the months of August 12, 2007

through and including September 12, 2008, in the amount of $46,832.10, exclusive of fees and

costs.

      7.      That the fair market value of said property is approximately $375,000.00

pursuant to Debtor's Schedules.

      8.      The Creditor does not have and has not been offered adequate protection for its

interest in said real property.

      9.      Based on the aforementioned Note and Deed of Trust to said real property held

by the Creditor, the Creditor has a security interest that will be jeopardized if the stay is not

lifted.

10.    If the Creditor is not permitted to pursue its remedies against the Debtor, it will suffer irreparable injury, loss and damage.

WHEREFORE, WELLS FARGO FINANCIAL NEVADA 2, prays that upon the hearing of this Motion, the stay afforded the Debtor pursuant to 11 U.S. Code Section 362 be terminated so as to permit WELLS FARGO FINANCIAL NEVADA 2 to pursue foreclosure proceedings and to continue and/or complete the same and apply the proceeds of said sale to the indebtedness due the Creditor by the Debtor provided the debt to the Creditor is not cured in the time required by law.

Upon disposition of the collateral, WELLS FARGO FINANCIAL NEVADA 2 will amend or delete its Proof of Claim on file with the Court and provide the Chapter 13 Trustee notice of the same.

DATED this 17th day of October, 2008.

KRAVITZ, SCHNITZER, SLOANE,
JOHNSON & EBERHARDY, CHTD..


BY /s/JEFFREY G. SLOANE, ESQ.
JEFFREY G. SLOANE, ESQ.
Nevada Bar No. 000784
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Attorneys for Creditor

EXHIBIT 1

**Receipt/Conformed Copy**

Requestor:
CHICAGO TITLE
10/14/2004 08:47:04    T20040113951
Book//Instr:    20041014-0000692
Trust Deed                    Page Count: 13
Fees: $26.00    N/C Fee: $0.00

Frances Deane
Clark County Recorder

Prepared by:
QUENTIN RICHARD WFF DOC PREP
3320 WEST SAHARA AVENUE STE 150
LAS VEGAS, NV 83102

Mail tax stmt to:
Elizabeth Keller
5520 Carnation Meadow St
Las Vegas, NV 89130

Return to:
WELLS FARGO FINANCIAL NEVADA 2, INC.
5808 WEST CRAIG ROAD, STE 101
LAS VEGAS, NV 89130

04902221

APR: 7.30

☐ If this box is checked, your loan is a "home loan" as defined in Section 5 of Title 52 of N.R.S.

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on . . 10/03/04 . . . . . . . . . . . . . . . . . .
The grantor is . ELIZABETH KELLER , AN UNMARRIED WOMAN, . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ("Borrower"). The trustee is
Wells Fargo Financial Nevada 2, Inc. ("Trustee"). The beneficiary is Wells Fargo Financial Nevada 2,
Inc., which is organized and existing under the laws of Nevada, and whose address is . . . . . . . . . . . . . .
5808 W. CRAIG RD, STE 101 . . . . . . . . . . . . LAS VEGAS, NV . . . . 89130 . . . . . . . . . . . . ("Lender").
Borrower owes Lender the principal sum of THREE HUNDRED FORTY FIVE THOUSAND SEVENTY ONE DOLLARS
AND 70/100. . . . . . . . . . . . . . . . . . . . . Dollars (U.S. $ .345071.70 . . . . . . ). This debt is evidenced by
Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on . . . . . . . . 10/12/24 . . . . . . . . . . .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with
interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c)
the performance of Borrower's covenants and agreements under this Security Instrument and the Note.
For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the
following described property located in . . . . . CLARK . . . . . . . . . . . . . . . . . County, Nevada:

THE DESCRIPTION OF THE PROPERTY IS ON A SEPARATE FORM ATTACHED TO THIS
MORTGAGE/DEED OF TRUST, WHICH DESCRIPTION IS PART OF THIS MORTGAGE/
DEED OF TRUST.

which has the address of . . . . . . . . . . . . . . . 5520 CARNATION MEADOW STREET. . . . . . . . . . . . . . .
                                                    [Street]
. . . . LAS VEGAS . . . . . . . . . . . . . . . . . . Nevada . . . . 89130 . . . . . . . . . . . ("Property Address");
            [City]                                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and
additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property."

Page 1 of 9                                                                    NV4640004

RECEIVED 2004/10/07 11:02:1

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** If requested by Lender in writing and subject to applicable law, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

Page 2 of 8                                                            MV-6040-0904

RECEIVED 2004/10/07 11:05:1

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable if any under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. If applicable Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

NV-0040-0704

RECEIVED 2004/10/07 11:02:1

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

Page 4 of 8

MV-3040-0004

RECEIVED 2004/10/07 11:05:1

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

RECEIVED 2004/10/07 11:02:1

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

NV 20430-004

RECEIVED 2004/10/07 11:05:1

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it, except for charges authorized by law. Such person or persons shall pay any recordation costs.

23. **Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law,

24. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ N/A

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1 - 4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Borrower *Elizabeth Keller* ............ (Seal)
ELIZABETH KELLER
Borrower .................................... (Seal)

The Notary Acknowledgment will Follow on the Next Page.

Page 8 of 8

RECEIVED 2004/10/07 11:02:17

State of Nevada
County of _Clark_

On _6th of October 2004_ _____ before me, the undersigned Notary Public in and for said
County and State, personally appeared _Elizabeth Keller_ _____
known to me to be the person(s) described in and who executed the foregoing instrument, who
acknowledged to me he, she or they executed the same freely and voluntarily and for the uses and
purposes therein mentioned.

Witness my hand and official seal.

_____
Notary Public

(SEAL)

EUGENE E. BROOKS
Notary Public, State of Nevada
Appointment No. 04-88341
My Appt. Expires Apr 30, 2008

RECEIVED 2004/10/07 11:02:

Addendum for legal description of Mortgage/Deed
dated:  October 6, 2004, Elizabeth Keller, Mortgagor.

Lot Ninety-Seven (97) in Block Six (6) of TIERRA VISTA ESTATES UNIT 3, as shown by map thereof
on file in Book 69 of Plats, Page 34, in the Office of the County Recorder of Clark County, Nevada.

*Elizabeth Keller*  10/06/04
Elizabeth Keller

EXHIBIT 2

RECEIVED 2004/10/07 11:05:11

Prepared by:

QUENTIN RICHARD WFF DOC PREP
3320 WEST SAHARA AVENUE STE 150
LAS VEGAS, NV 89102

Return to:

WELLS FARGO FINANCIAL NEVADA 2, INC.
5803 WEST CRAIG ROAD, STE 101
LAS VEGAS, NV 89130

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made on  10/06/04  and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Wells Fargo Financial Nevada 2, (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

. . . . . . . . . . . . . . . 5520 CARNATION MEADOW STREET, NV 89130 . . . . . . . . . . . . . . . .
[Property Address]

**NOTICE: THE SECURITY INSTRUMENT SECURES A NOTE WHICH CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS. THE NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**2. INTEREST RATE AND PERIODIC PAYMENT CHANGES**

The Note provides for an initial interest rate of . . . . 8.79 %. The Note provides for changes in the interest rate and the payments, as follows:

**3. PAYMENTS**

**(A) Scheduled Payments**

I will pay principal and interest by making payments when scheduled. I will make my scheduled payments each month beginning on  11/12/04 . . . . . . . . . . . . . . . . . . . .

**(B) Maturity Date and Place of Payments**

I will make these payments as scheduled until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

My scheduled payments will be applied to interest before principal. If, on  10/12/24 . . . . . . . I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my scheduled payments at 5803 W CRAIG RD., STE 101 . . . . . . . . . . . . . . . . . . . . . . LAS VEGAS, NV . . . . . 89130 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . or at a different place if required by the Note Holder.

**(C) Amount of My Initial Scheduled Payments**

Each of my initial scheduled payments will be in the amount of U.S. $ . . . 2832.00 . . . . This amount may change.

NV-3642-0904                                                                Page 1 of 3

RECEIVED 2004/10/07 11:05:1

**(D) Scheduled Payment Changes**

Changes in my scheduled payments will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my scheduled payment in accordance with Section 4 of this Note.

**(E) Late Charge**

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of my full payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

## 4. INTEREST RATE AND SCHEDULED PAYMENT CHANGES

**(A) Change Dates**

Each date on which my interest rate could change is called a "Change Date." The interest rate I will pay may change on .......10/12/07........... and on every sixth month anniversary date thereafter that is before the maturity date. There will be no Change Dates on or after the maturity date. The interest rate in effect on the maturity date will remain in effect after the maturity date until the full amount of principal has been paid.

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the highest "Prime Rate" as published by the *The Wall Street Journal.*

The Index figure published in *The Wall Street Journal* on the last business day of the month corresponding to one day preceding one month prior to the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding ...TWO AND 04/100... percentage points ( ...02.04..% this number is referred to hereafter as the "Margin") to the Current Index. The result of this calculation will be rounded off by the Note Holder to the nearest 0.125%. Subject to the limitations stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the scheduled payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my scheduled payment.

**(D) Limits on Interest Rate Changes**

My interest rate will never be increased or decreased on the first Change Date by more than three (3%) percentage points. For all Change Dates thereafter, my interest rate will never be increased or decreased by more than one (1%) percentage point. Subject to any limitation set forth in Section 6 of the Note, my interest rate will never be more than six (6%) percentage points greater than the initial interest rate set forth in Section 2 above. Notwithstanding anything to the contrary in this Note, my interest rate will never decrease below the Margin.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new scheduled payment beginning on the first scheduled payment date after the Change Date until the amount of my scheduled payment changes again.

**(F) Notice of Changes**

At least 25 days, but not more than 120 days, before the effective date of any payment change, the Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my scheduled payment. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any question I may have regarding the notice.

NV-2040-0304

Page 2 of 3

RECEIVED 2004/10/07 11:02:1

☒ **FUNDS FOR TAXES AND INSURANCE**
Uniform Covenant 2 of the Security Instrument is waived by the Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

Borrower  *Elizabeth Keller* ............................. (Seal)
ELIZABETH KELLER

Borrower  ........................................................ (Seal)

Page 3 of 3

RECEIVED 2004/10/07 11:05:

# ADJUSTABLE RATE NOTE

**NOTICE TO BORROWER: THIS NOTE CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

10/06/04                                                    LAS VEGAS, NV          89130
[Date]                                                         [City, State, Zip]

5620 CARNATION MEADOW STREET, NV 89130
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   34507/70          (this amount consists of the Amount Financed and any Points and is called "principal"), plus interest, to the order of the Lender. The Lender is Wells Fargo Financial Nevada 2, Inc. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.   INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of           5.75 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(A) of this Note. Interest will be calculated on an interest-bearing basis.

3.   PAYMENTS

(A) Scheduled Payments

I will pay principal and interest by making payments when scheduled. I will make my scheduled payments each month beginning on 11/12/04 . . . . . . . . . .

(B) Maturity Date and Place of Payments

I will make these payments as scheduled until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

My scheduled payments will be applied to interest before principal. If, on 10/12/24 . . . . . . I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my scheduled payments at 6603 W CRAIG RD, STE 101 . . . . . . . . . . . . LAS VEGAS, NV . . . . 89130 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . or at a different place if required by the Note Holder.

(C) Amount of My Initial Scheduled Payments

Each of my initial scheduled payments will be in the amount of U.S. $ . . . . 2672.00 . . . . . . . . This amount may change.

(D) Scheduled Payment Changes

Changes in my scheduled payments will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my scheduled payment in accordance with Section 4 of this Note.

(E) Late Charge

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of my full payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

4.   INTEREST RATE AND SCHEDULED PAYMENT CHANGES

(A) Change Dates

Each date on which my interest rate could change is called a "Change Date." The interest rate I will pay may change on 10/12/09          and on every sixth month anniversary date thereafter that is before the maturity date. There will be no Change Dates on or after the maturity date. The interest rate in effect on the maturity date will remain in effect after the maturity date until the full amount of principal has been paid.

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the highest "Prime Rate" as published by the The Wall Street Journal.

The Index figure published in The Wall Street Journal on the last business day of the month corresponding to one day preceding one month prior to the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding         TWO AND 04/100 percentage points ( 02.04 % this number is referred to hereafter as the "Margin") to the Current Index. The result of this calculation will be rounded off by the Note Holder to the nearest 0.125%. Subject to the limitations stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the scheduled payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my scheduled payment.

(D) Limits on Interest Rate Changes

My interest rate will never be increased or decreased on the first Change Date by more than three (3%) percentage points. For all Change Dates thereafter, my interest rate will never be increased or decreased by more than one (1%) percentage point. Subject to any limitation set forth in Section 6 below, my interest rate will never be more than six (6%) percentage points greater than the initial interest rate set forth in Section 2 above. Notwithstanding anything to the contrary in this note, my interest rate will never decrease below the Margin.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new scheduled payment beginning on the first scheduled payment date after the Change Date until the amount of my scheduled payment changes again.

ORIGINAL
NV-3040-08/04

Page 1 of 3

prepaid by a loan made by Note Holder or one of Note Holder's affiliates.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment. This loan and Note are governed by the laws of Nevada. The rate and amount of charges are authorized by NRS 99.050 and 99.055, as amended.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

**(A)  Default**

If I do not pay the full amount of each scheduled payment on the date it is due, I will be in default.

**(B)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(C)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full or does not exercise the right of set-off as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**(E)  Returned Check Charge**

If a check used to make a payment on this loan is returned for any reason, except an error by Note Holder, I will pay Note Holder a $25 charge.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(B) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as the Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

Page 2 of 3                                                                                    NV-97-03-0304

RECEIVED 2008/10/07 11:05:1

**(F) Notice of Changes**

At least 25 days, but no more than 120 days, before the effective date of any payment change, the Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my scheduled payment. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT**

I can prepay my loan at any time. However, if the Loan Statement indicates that a prepayment penalty may be charged, and if my loan is prepaid in whole for any reason (including after a default) within 3 years from the Date of Loan shown above, and the amount prepaid within the prior twelve-month period (including the date of prepayment) exceeds 20% of the original principal balance of my Loan, the Note Holder may charge a prepayment charge equal to 6 months' interest on such excess amount. I agree to pay Note Holder this prepayment charge on the date I make the full prepayment. I also agree that any delay or failure to collect this prepayment charge does not prevent the Note Holder from collecting the prepayment charge at a later time. However, regardless of how I prepay my loan, I will never have to pay more than one prepayment charge. Notwithstanding the above, no prepayment charge will be collected if (a) the prepayment results solely because of the enforcement of a "due on sale" clause in a real estate mortgage or deed of trust which secures my loan or (b) my loan is

Case 08-14891-lbr    Doc 30    Entered 10/17/08 18:52:59    Page 23 of 24

RECEIVED 2004/10/07 11:05:1

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**I ACKNOWLEDGE THE EXISTENCE OF A SEPARATE ARBITRATION AGREEMENT SIGNED CONCURRENTLY WITH THIS NOTE, AND I SPECIFICALLY AGREE TO BE BOUND BY ITS TERMS.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Borrower

_Elizabeth Keller_ ........ ...    .... (Seal)
ELIZABETH KELLER

Borrower

## ** SECTION 362 INFORMATION SHEET **

ELIZABETH KELLER
Debtor

BK-S-08-14891-LBR
Bankruptcy No.

WELLS FARGO FINANCIAL NEVADA 2
Movant

Chapter:

Property Involved in this Motion: 5520 Carnation Meadow Street, Las Vegas, NV 89130

Notice Served to: Debtor(s)____x____; Debtor's Counsel __x___; Trustee __x___
Date of Service: October 17, 2008

-----------------------------------------------

### MOVING PARTY'S CONTENTIONS:

The EXTENT and PRIORITY OF LIENS:

1st $356,157.95

2nd _____

3rd _____

4th _____

Other _____
Total Encumbrances: _____

APPRAISAL or OPINION as to VALUE:

APPROXIMATELY: $375,000.00

-----------------------------------------------

### TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR

Amount of Note: $345,071.70
Interest Rate: 6.79%
Duration: 240 months
Payment per Month:$3,345.15
Date of Default: 8/12/07-9/12/08
Amount of Arrears: $46,832.10
Date of Notice of Default: n/a

SPECIAL CIRCUMSTANCES:Counsel attempted
in good faith to communicate with the other parites
regarding resolution of the Motion before filing its
Motion for Relief from Stay.

SUBMITTED BY:  JEFFREY G. SLOANE, ESQ.
Signature:

/s/JEFFREY G. SLOANE, ESQ.
KRAVITZ, SCHNITZER & SLOANE, CHTD.
8985 S. Eastern Ave., Suite 200
Las Vegas, NV 89123          (702) 362-6666

-----------------------------------------------

### DEBTOR'S CONTENTIONS:

The EXTENT and PRIORITY OF LIENS:

1st _____

2nd _____

3rd _____

4th _____

Other _____
Total Encumbrances: _____

APPRAISAL or OPINION as to VALUE:

_____

### DEBTOR'S OFFER OF "ADEQUATE PROTECTION" FOR MOVANT:

SPECIAL CIRCUMSTANCES:

SUBMITTED BY: _____
Signature:

_____

**"EXHIBIT A"**          form 362/10/95